UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **2:25-CR-55** |
| | ) | |
| GEORGE H. RUTH, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

On July 10, 2025, the Court held Defendant's initial appearance on the petition for revocation filed in the cause, at which time Defendant requested preliminary and detention hearings, which were scheduled before the undersigned for July 11, 2025. During the preliminary hearing, the United States presented the testimony of United States Probation Officer Lawson H. Burrow. Officer Burrow has served as the probation officer most recently assigned to Defendant's case. Defendant was initially indicted and subsequently pled guilty to fraud charges in the Southern District of Indiana. [Doc. 1-3]. Defendant was ordered to serve 56 months in prison, followed by three years of supervised release. In February of this year, Defendant moved the district court in Indiana for early termination of his supervised release. [Doc. 1-1]. When that request was denied, Defendant requested a transfer of his supervision to the Eastern District of Tennessee, where he has been living with his brother and sister-in-law for an extended period.

Officer Burrow testified that Defendant provided him with monthly supervision reports, in which Defendant answered "no" in response to the question asking whether Defendant had access to any post office boxes. These reports were introduced as Exhibit 1 during the hearing. Officer

Burrow further testified that he recently had contact with a United States Postal Inspector, who reported that Defendant had access to several post office boxes. Furthermore, some of the applications for the post office boxes were dated during a period in which the Defendant was ordered to be on home confinement. Those applications were introduced as Exhibit 2 to the hearing. No evidence was offered to suggest that the post office boxes had been closed. Moreover, the Court observes that Defendant had applied for these post office boxes in the name of a business which was never disclosed to the Probation Office, and further applied to be an agent to receive mail for a second business which was also not disclosed. Based upon the testimony of Officer Burrow and the exhibits introduced, the Court found that probable cause existed to support the allegation in the revocation petition that Defendant had violated his conditions of release by making false statements in his monthly supervision reports.

As for the issue of detention, Defendant asserted that he should be released pending his final revocation hearing because he did not pose a serious risk of flight or present a danger to the community, primarily due to his serious health issues. Counsel for the Defendant provided proffer that Defendant has very serious heart issues, having had multiple heart attacks and being life-flighted for treatment a few months ago, along with diabetes, high blood pressure, neuropathy and kidney problems.[1] The United States stipulated to Defendant's severe health issues, but argued that these issues did not prevent Defendant from committing crimes nor did they prevent him from being a serious risk of flight.

Counsel for the Defendant also called Defendant's brother as a witness, who was proposed as a third-party custodian. Defendant's brother provided testimony regarding Defendant's poor health and medical needs, and how he helped ensure that Defendant received medical treatment.

---

[1] During the evening between Defendant's initial appearance and his detention hearing, he was admitted to the local hospital because he was having chest pains but was released after undergoing testing.

On cross examination, Defendant's brother was asked about whether Defendant had taken any trips while on release. His brother initially stated that he was unaware of any trips that Defendant took while under supervision, however, he then admitted that he and Defendant had stopped at a casino while returning from Indiana while Defendant was still on supervised release. He additionally mentioned that another individual who was also on supervised release on federal charges had briefly lived with him, at Defendant's request, while Defendant was living in his home.[2]

The United States provided proffer as to Defendant's significant and decades-long criminal history, which includes a wide variety of federal and state fraud charges, as well as numerous charges which were incurred while the defendant was on parole or supervised release. Additionally, the United States advised that Defendant has had his supervised release revoked on multiple occasions.

The Court notes that generally when financial crimes are at issue, conditions of release can be fashioned which both reasonably assure the safety of the community and a defendant's appearance at future proceeding. However, this is a unique case. Defendant simply could not meet his burden of proving by clear and convincing evidence that he is not a serious risk of flight if released. Defendant's criminal history demonstrates a willingness to commit fraud, i.e., to obtain the financial resources to leave the district, even while on home confinement. Additionally, Defendant has a guideline range which suggests that he may be facing a long period of additional incarceration. Defendant's consistent and pervasive history of fraud prevent Defendant from being releasable pending his final revocation hearing, despite his serious health issues.

Furthermore, the Court finds that Defendant's brother is not a viable third-party custodian for two reasons. The first is that he allowed Defendant to talk him into allowing a convicted felon

---

[2] It does not appear that Defendant reported living with another convicted felon.

3

Case 2:25-cr-00055-DCLC-CRW   Document 13   Filed 07/14/25   Page 3 of 4   PageID #: 68

to live in his home while Defendant was residing there, which is a violation of Defendant's conditions of release. The second is that he either knows of Defendant's more recent violations of his conditions of release alleged in the revocation petition and has turned a blind eye to them or Defendant has been able to engage in these violations without his brother's knowledge, neither of which gives the Court confidence that Defendant's brother could effectively serve as the Court's eyes and ears.

For the reasons stated on the record at the hearing, the Court found that Defendant had failed to meet the high bar of proving by clear and convincing evidence that he would not present a risk of flight if he were to be released pending his revocation hearing. As such, Defendant's request for release was denied. Accordingly, Defendant shall remain in the custody of the U.S. Marshal pending his revocation hearing on **August 14, 2025, at 9:00 a.m.** before the Honorable Clifton L. Corker, United States District Judge. Any agreed order of revocation the parties wish to submit for the District Court's consideration must be provided to the District Court on or before **August 7, 2025**.

SO ORDERED:

/s/Cynthia Richardson Wyrick
United States Magistrate Judge